# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS KLAUS, individually and on behalf of all others similarly situated, | : : : : | Civil No. 1:12-CV-2488 |
| | : | (Judge Conner) |
| Plaintiff | : : | (Magistrate Judge Carlson) |
| v. | : : | |
| JONESTOWN BANK AND TRUST COMPANY, OF JONESTOWN, PENNSYLVANIA, | : : : : | |
| Defendant | : | |

## REPORT AND RECOMMENDATION

**I.    INTRODUCTION**

Now pending before the Court is the defendant's motion to dismiss the plaintiff's complaint on the grounds that the plaintiff lacks standing to bring a claim for relief under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq. ("ADA"), and, therefore, that the Court lacks subject-matter jurisdiction to hear this action. The motion has been fully briefed and has been referred to the undersigned for purposes of preparing a report and recommended disposition. For the reasons that follow, we find the defendant's legal argument and conclusions regarding standing at this point in the action to be unpersuasive and unduly narrow, and, therefore,

disagree with the defendant's argument regarding the existence of Article III standing in this case. Accordingly, we recommend that the motion be denied.

## II.  BACKGROUND

Thomas Klaus commenced the above-captioned action against Jonestown Bank and Trust Company ("Jonestown Bank" or the "defendant") on December 12, 2012, alleging that the bank violated Title III of the ADA by failing to maintain automatic teller machines ("ATMs") that comply with the requirements of the ADA and its implementing regulations that are aimed at ensuring that ATMs are accessible to blind and visually-impaired individuals.

Klaus suffers from retinitis pigmentosa and has been legally blind his entire life, and totally blind since 1994. (Id. ¶ 1.) Throughout the plaintiff's daily business, he has occasion to use banking services through ATMs – provided those services are accessible to the blind. (Id. ¶ 2.) If an ATM does not have accessibility features that are mandated under federal law, a blind consumer like Mr. Klaus is unable to use the ATM independently, and is then faced with sharing private banking information with other individuals to complete banking transactions. (Id. ¶ 3.)

Although federal law now imposes a number of requirements that are intended to ensure that ATMs can be accessed and used by blind and visually-impaired individuals, accessibility problems remain a concern. Thus, the plaintiff refers to a

recent article in the Wall Street Journal which observed that at least 50% of the ATMs throughout the nation remain inaccessible to blind individuals, in violation of federal law. (Id. ¶ 4.) According to the plaintiff, a number of the ATMs in the geographic region that the plaintiff typically travels as part of his everyday and weekly activities violate accessibility requirements.

Sometime after March 15, 2012, the plaintiff visited an ATM owned and operated by Jonestown Bank located at 101 Northside Commons, Palmyra, Pennsylvania. According to the plaintiff, this ATM, which is located 21 miles from the plaintiff's home. (Id. ¶ 9.) Nevertheless, given its proximity, the plaintiff alleges that he will continue regularly to visit the ATM in the future as part of his effort to locate accessible ATMs that he personally can use that are located within the geographic zone that he regularly travels, and as part of his personal effort to locate ATMs accessible to the blind community at large. (Id. ¶ 10.)

With respect to the actual violations alleged, the plaintiff contends that sometime after March 15, 2012, the plaintiff discovered that the subject ATM lacked a functional voice-guidance feature, there were no Braille instructions for initiating speech mode, and the function keys did not have proper tactile symbols. (Id. ¶ 39.) The plaintiff alleges that although the defendant has centralized policies regarding the management and operation of the bank's ATMs, Jonestown Bank nevertheless does

not have a plan or policy that is reasonably calculated to cause its ATMs to be in timely compliance with Chapter 7 of the 2010 Standards for Accessible Design (the "2010 Standards").[1]  (Id. ¶ 40.)

The plaintiff alleges that he is routinely in the vicinity of the subject ATM that is inaccessible to him, but has to date been without ability to use the ATM because it remains in violation of the 2010 Standards.  (Id. ¶ 43.)  In addition, the plaintiff alleges that a "significant percentage" of the ATMs that are located within the geographic zone that the plaintiff travels regularly do not comply with the 2010 Standards, and thus are similarly not accessible to blind individuals like him.  (Id. ¶

---

[1] The 2010 Standards were a product of the Department of Justice's rulemaking with respect to Title III of the ADA, which prohibits discrimination in the activities of places of public accommodation, and requires places of public accommodation to comply with ADA standards and to be readily accessible to, and independently usable by, individuals with disabilities.  See 42 U.S.C. §§ 12181-89.  The 2010 Standards that DOJ issued modified the 1991 Standards for Accessible Design (the "1991 Standards"), which themselves were based on the 1991 Americans with Disabilities Act Accessibility Guidelines (the "1991 ADAAG"), which was later modified in 2004 (the "2004 ADAAG").

The 2004 ADAAG provided specific accessibility guidelines for ATMs, including guidelines intended to ensure that ATMs are accessible to, and capable of being used independently by, visually-impaired individuals.  (Compl., ¶ 33.) These guidelines include a number of specific elements, including that ATMs be speech enabled; that input controls shall be tactilely discernible; that function keys shall have specific tactile symbols; and that Braille instructions shall be provided for initiating the speech mode.  Section 7 of the 2010 Standards embraces these requirements prescribed by the 2004 ADAAGs.

44.) Nevertheless, the plaintiff avers that he will continue to attempt to use the subject ATM because he wishes to find convenient accessible ATM options available to him with the geographic zone that he routinely travels as part of his regular activities, and because he wants to increase ATM accessibility for the blind in general. (Id. ¶ 46.) However, he alleges that without injunctive relief, he will continue to be unable to independently use the subject ATM in violation of his rights under the ADA. (Id. ¶ 48.)

Jonestown Bank has moved to dismiss the complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing that the plaintiff lacks standing to bring this lawsuit based on the facts pled in the complaint. Ignoring the substantive violations of the ADA alleged in the complaint, and instead dismissively characterizing the complaint as a series of "scattershot facts and legal conclusions," (Doc. 12, at __), the defendant focuses on certain allegations in order to conclude that the plaintiff has failed to show that he suffered a concrete and particularized, and actual or imminent, injury-in-fact of a legally protected interest.

Because the plaintiff in this case seeks injunctive relief, Jonestown Bank observes that he bears the burden of establishing a real and immediate threat of injury in order to satisfy the injury-in-fact requirement required under Article III of the United States Constitution. The defendant essentially argues that the plaintiff has

failed to meet this burden in the complaint because: (1) the plaintiff has brought a number of similar lawsuits against other banks that allegedly have non-ADA compliant ATMs within this geographic region; (2) the subject ATM in this case is 21 miles from the plaintiff's home; and (3) there are relatively few other allegations in the complaint that satisfy the defendant that the plaintiff is likely to return to the location of the subject ATM in the future. Whatever weight these observations might have as ultimate matters of proof and persuasion at trial, upon consideration, we find the defendant's argument unpersuasive at this early stage of the litigation as grounds for dismissal of this case on the pleadings. Therefore, we will recommend that the motion to dismiss be denied.

### III. **DISCUSSION**

The defendant has moved to dismiss the complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, on the grounds that the Court lacks subject-matter jurisdiction over this lawsuit because the plaintiff lacks standing to bring suit.

The doctrine of standing is predicated on the requirement prescribed by Article III of the United States Constitution that restricts the jurisdiction of federal courts to "cases" and "controversies". In this regard, under Article III, Section 2 of the United States Constitution, federal courts have authority to adjudicate an action only if it constitutes a justiciable "case" or a "controversy" that has real consequences for the

parties. Raines v. Byrd, 521 U.S. 811, 818 (1997); Eagle Environmental, L.P. v. Beckman, 237 F.3d 186, 192-93 (3d Cir. 2001).

Discussing the justiciability requirement of standing imposed by Article III, Section 2 of the Constitution, the United States Supreme Court has explained that:

> The requirements of Art. III are not satisfied merely because a party requests a court of the United States to declare its legal rights, and has couched that request for forms of relief historically associated with courts of law in terms that have a familiar ring to those trained in the legal process. The judicial power of the United States defined by Art. III is not an unconditioned authority to determine the constitutionality of legislative or executive acts. The power to declare the rights of individuals and to measure the authority of governments, this Court said 90 years ago, "is legitimate only in the last resort, and as a necessity in the determination of real, earnest and vital controversy." . . . As an incident to the elaboration of this bedrock requirement, this Court has always required that a litigant have "standing" to challenge the action sought to be adjudicated in the lawsuit.

Valley Force Christian College v. Americans United for the Separation of Church & State, Inc., 454 U.S. 464, 471 (1982) (quoting Chicago & Grand Trunk R. Co. v. Wellman, 143 U.S. 339, 345 (1892)). Acknowledging that the concept of constitutional standing had long been elusive of easy definition, the Court articulated that:

> at an irreducible minimum, Art. III requires the party who invokes the court's authority to show that he personally has

suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision.

Id. at 472. In later decisions, the Supreme Court further clarified this standard by holding that in order to satisfy Article III's standing requirements, a plaintiff must show: (1) that it has suffered an injury in fact that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendants; and (3) it is likely, as opposed to merely speculative, that the inquiry will be redressed by a favorable decision. Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)); see also Whitmore v. Arkansas, 495 U.S. 149, 155 (1990) (alleged injury "must be must be concrete in both a qualitative and temporal sense. The complainant must allege an injury to himself that is distinct and palpable, as opposed to merely abstract.").[2] In addition, where a plaintiff seeks injunctive relief, as is the case here,

---

[2] The Court in Valley Forge explained that the constitutional requirement that a litigant demonstrate actual injury redressable by the judiciary tends to assure that the legal questions presented to the court "will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." 454 U.S. at 472.

In addition to these constitutional considerations, the Supreme Court has noted that even when a plaintiff has articulated redressable injury, the Court has,

he must demonstrate a "real and immediate threat of future injury by the defendant." City of Los Angeles v. Lyons, 461 U.S. 95, 101-02 (1983). A plaintiff that lacks constitutional standing is precluded from bringing suit in federal court. Valley Forge, 454 U.S. at 474.

The party invoking federal jurisdiction bears the burden of establishing the elements of standing, "with the manner and degree of evidence required at the successive stages of the litigation." Lujan, 504 U.S. at 561. At the early pleading stage of a case, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss 'we presume[] that general allegations embrace those specific facts that are necessary to support the claim.'" Id. (quoting Lujan v. National Wildlife Federation, 497 U.S. 871, 889 (1990)).

In this case, the defendant argues that the complaint fails to allege facts to show that there is a real and immediate threat that the plaintiff will be harmed again in the future, and thus the plaintiff cannot demonstrate an "injury-in-fact" necessary to bring

---

due to prudential considerations, "refrained from adjudicating 'abstract questions of wide public significance' which amount to 'generalized grievances,' pervasively shared and most appropriately addressed in the representative branches. Valley Forge, 454 U.S. at 475 (citations omitted) (emphasis added). This concept of prudential standing is not relevant to the standing issues presented in this case.

9

suit for the injunctive relief requested in this lawsuit. In essence, the defendant's argument boils down to its assessment that since the plaintiff lives more than 20 miles from the subject ATM, he is unlikely to return to the subject ATM. Furthermore, the defendant argues that because the complaint does not, in the defendant's view, contain sufficient additional facts to support the plaintiff's claim that he will attempt to return, the Court should consider the plaintiff's claim regarding his intention to be conclusory and unworthy of credence. In addition, the defendant suggests that because the plaintiff has brought numerous other lawsuits against other banking institutions for similar alleged ADA violations at locations closer to the plaintiff's residence, this should be construed by the Court to undermine the plaintiff's assertion that he will continue to attempt to use the subject ATM in the future. The defendant also seems to characterize the plaintiff as a nettlesome litigant whose history of advocating on behalf of himself and similarly situated individuals who suffer from visual impairment somehow casts doubt on his standing to bring this particular lawsuit against this particular defendant. We find none of these arguments persuasive, and thus disagree with the defendant that the Court "must" dismiss the complaint on standing grounds. (Doc. 12, at 16.)

As explained further below, in cases where plaintiffs seek injunctive and declaratory relief, federal courts have found that there are two ways that a plaintiff

10

can meet his burden of establishing "injury-in-fact". The first way of demonstrating that the plaintiff intends to return to the non-compliant public accommodation, and in doing so will face real and immediate threat that he will again be harmed by the non-compliant accommodation. Alternatively, a plaintiff may show injury-in-fact by establishing that the inaccessible conditions will deter him from again visiting the non-compliant public accommodation, despite his desire to do so. The defendant in this case focuses exclusively on the first of these two methods of demonstrating the injury requirement, but essentially ignores the second method. In our view, the plaintiff's complaint adequately pleads injury-in-fact under either of these methods at the outset of this lawsuit.

The first method of showing injury-in-fact relies on the plaintiff demonstrating an intent to return to the offending accommodation, which will be found in the following circumstances: (1) the plaintiff has alleged that the defendant has engaged in past discriminatory conduct that is violative of the ADA; (2) it is reasonable to infer from allegations in the complaint that the discriminatory conduct will continue; and (3) it is reasonable to infer based on past patronage, proximity of the public accommodation to the plaintiff's home, business, or personal connections to the area that the plaintiff intends to return to the public accommodation in the future. See, e.g., Chapman v. Pier 1 Imports, 631 F.3d 939, 949 (9th Cir. 2011); Camarillo v.

Carrols Corp., 518 F.3d 153, 158 (2d Cir. 2008); Pickern v. Holiday Quality Foods, Inc., 293 F.3d 1133, 1137-38 (9th Cir. 2002).

Regarding the second method of showing injury-in-fact, which focuses on whether the non-compliant public accommodation actually deters a disabled plaintiff from visiting or making use of the non-compliant accommodation, the method tracks the ADA itself, which provides that:

> [n]othing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions.

42 U.S.C. § 12188(a)(2). In Chapman, the Ninth Circuit Court of Appeals summarized the two methods of establishing standard in Title III ADA cases as follows:

> [A]n ADA plaintiff can show a likelihood of future injury when he intends to return to a noncompliant accommodation and is, therefore, likely to reencounter a discriminatory architectural barrier. Alternatively, a plaintiff can demonstrate sufficient injury to pursue injunctive relief when discriminatory architectural barriers deter him from returning to a noncompliant accommodation. Just as a disabled individual who intends to return to a noncompliant facility suffers an imminent injury from the facility's '"existing or imminently threatened noncompliance with the ADA," a plaintiff who is deterred from patronizing a store suffers the ongoing "actual injury" of lack of access to the store. That is, an ADA plaintiff suffers an injury-in-fact either because

> discriminatory architectural barriers deter him from returning to a facility or because they "otherwise interfere with his access to" the facility. Thus, we have Article III jurisdiction to consider requests for injunctive relief both to halt the deterrent effect of noncompliant accommodation and to prevent imminent "discrimination," as defined by the ADA, against a disabled individual who plans to visit a noncompliant accommodation in the future.

Chapman, 631 F.3d at 950; see also Disabled Americans for Equal Access, Inc. v. Ferries Fel Caribe, Inc., 405 F.3d 60 (1st Cir. 2005); Pickern, 293 F.3d at 1138

In our assessment, the plaintiff's complaint alleges facts that are sufficient to demonstrate "injury-in-fact" under either of these two alternative methods of establishing Article III standing in this ADA discrimination action. We reach this conclusion upon consideration of the following salient allegations in the complaint:

38. After March 15, 2012, Plaintiff visited Defendants' ATM located at 101 Northside Commons, Palmyra, PA, 17078.

39. Plaintiff is routinely in the vicinity of the Subject ATM.

40. Plaintiff routinely visits friends in Palmyra, PA.

41. While he is in Palmyra, Plaintiff regularly visits various ATMs, including the Subject ATM.

42. In addition, Plaintiff regularly visits Hersheypark, which is located approximately five (5) miles from the Subject ATM.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

45. To date, Plaintiff has not had the practical ability to use the Subject ATM, because it is in violation of the 2010 Standards (and prior to the effective date of the 2010 Standards, the Subject ATM was not otherwise readily accessible to or independently usable by blind individuals).

46. Plaintiff will continue to attempt to use the Subject ATM because he wants to identify convenient accessible ATM option within the geographic zone that he typically travels as part of his everyday and weekly activities, and he wants to increase ATM accessibility for the blind community, generally. However, so long as the Subject ATM continues to violate Chapter 7 of the 2010 Standards, Plaintiff will be unable to use it and will be deterred from visiting it.

47. Though Defendant has centralized policies regarding the management and operation of its ATMs, Defendant does not have a plan or policy that is reasonably calculated to cause its ATMs to be in timely compliance with Chapter 7 of the 2010 Standards, as is demonstrated by the fact that is network remains out of compliance.

Considering these factual allegations, which the defendant either discounts or essentially disregards, we find that the plaintiff has, at this stage of the litigation, demonstrated that he has standing to pursue his ADA claims. Indeed, these allegations, in our judgment, would support a finding that the plaintiff has standing to sue under either of the alternative means of establishing standing that were summarized above. These allegations claim that the plaintiff has been deterred from returning to the subject ATM, as it is inaccessible to him, while he has also pledged to continue his efforts to locate compliant and accessible ATMs in this geographic region in order to find banking accommodations that he can access, and which may meet the needs of the visually-impaired community in this area.

Instead of squarely addressing the alleged deterrent effects of its ATMs, the defendant focuses its motion on the question of whether the plaintiff can truly be said to intend to return to the subject ATM. In this regard, the defendant effectively ignores the deterrent effect doctrine entirely, and instead invites the Court to view skeptically the plaintiff's *bona fides* with respect to his intent to return to the subject ATM, emphasizing the plaintiff's status as a serial litigator who has brought multiple lawsuits against other banking institutions in this geographic region similarly alleging ADA discrimination due to inaccessible ATMs.

In doing so, the defendant urges the Court to apply a rigid four-part test that some district courts in the Third Circuit have applied in certain cases, although the test has not been endorsed by the Third Circuit in any case cited by the parties. Under this test, the courts that have employed it have looked at whether the allegations in a complaint are adequate to show a *specific* intent to return to the noncompliant accommodation. In order to answer this narrow question, these courts look at the following factors: "(1) plaintiff's proximity to the defendant's place of public accommodation, (2) plaintiff's past patronage, (3) definitiveness of the plaintiff's plans to return, and (4) plaintiff's frequency of nearby travel." Reviello v. Philadelphia Federal Credit Union, 2012 WL 2196320, at *4 (E. D. Pa. June 14, 2012).

Considering these factors together with the allegations in the complaint recited above, we find that the plaintiff satisfies this test, and we find unpersuasive the defendant's suggestion that the Court should – at this early stage – engage in a further, more qualitative assessment of the plaintiff's well-pleaded factual allegations, which would seemingly invite the Court to engage in an analysis that may be more properly reserved until summary judgment. See, e.g., Brown v. Showboat Atlantic Propco, LLC, 2009 WL 690625, at *2 (D.N.J. March 11, 2009) (applying four-factor test at the pleading stage, and noting that "the level of specificity to avoid dismissal

16

for lack of standing should not be exaggerated" and observing that a motion to dismiss "is not the time to test the credibility and veracity of the averments in plaintiff's complaint."); see also Access 4 All, Inc. v. Chicago Grande, Inc., 2007 WL 1438167, at *1 (N.D. Ill. May 10, 2007) ("At this stage of the litigation, the Court credits certain key assertions of [the plaintiff] about his intentions to visit the hotel in question again as of the time he filed suit; if the record to be developed bears out the validity of those assertions, then there likely is Article III standing . . . ."); Wilson v. PFS LLC, 2006 WL 38441517, at *4 (S.D. Cal. Nov. 2, 2006) ("While such detailed factors are considered at the summary judgment stage, where more facts are available post-discovery and the standard of review requires an in-depth analysis of the action's merits, they are not considered at the pleadings stage.").

Likewise, we find unpersuasive the defendant's suggestion that because the plaintiff is admittedly a "tester" of banking accommodations in this geographic area, and has accordingly initiated numerous actions in federal court to remedy perceived violations of Title III of the ADA affecting the plaintiff and other members of the visually-impaired community, that this somehow undermines his standing to prosecute this particular lawsuit. As the plaintiff emphasizes in his brief, numerous courts have rejected the notion that test plaintiffs, or other serial litigants, forfeit their own standing to sue for discrimination in Title III accessibility cases. See, e.g.,

Access For The Disabled, Inc. v. First Resort, Inc., 2012 WL 2917915, at *2-3 (M.D. Fla. July 17, 2012) (at summary judgment, holding the plaintiff had standing to sue, finding no evidence to dispute the plaintiff's assertions that she intended to return to the subject property, and finding that "whether [the plaintiff] is an ADA 'tester' does not preclude her standing in this case."); Harty v. Burlington Coat Factory of Pennsylvania, L.L.C., 2011 WL 2415169, at *8 (E.D. Pa. June 16, 2011) (finding that for purposes of standing, the plaintiff's allegations regarding his business connections to the area and his plan to return were more significant than the fact that the plaintiff had filed more than 200 ADA lawsuits); Access 4 All, Inc. v. Absecon Hospitality Corp., 2006 WL 3109966, at *7 (D.N.J. Oct. 30, 2006) ("Indeed, because Plaintiff Esposito is a frequent litigant with the stated goal of ensuring ADA compliance, his claim of intent to return to the Hampton Inn to do additional examinations is made more, not less, credible.")  We find the reasoning in these cases to be compelling and applicable in this particular action.

In summary, it is submitted that the specific factual averments set forth in the complaint are sufficient to demonstrate the plaintiff's standing to bring this action against the defendant for alleged violations of Title III of the ADA with respect to the subject ATM under either the deterrent effect theory, or the intent-to-return theory. We thus recommend that the Court deny the defendant's motion to dismiss pursuant

to Rule 12(b)(1) on the basis of subject matter jurisdiction. In the event the defendant discovers evidence during this case that casts legitimate doubt on the plaintiff's allegations, or otherwise may be relevant to a further assessment of the plaintiff's standing in this case, the bank, of course, should be permitted to bring this to the Court's attention through a properly supported motion for summary judgment. However, at this point, the plaintiff's allegations are adequate to demonstrate standing under either of the theories summarized above, and the motion to dismiss should be denied.

## IV. **RECOMMENDATION**

Accordingly, for the foregoing reasons, IT IS HEREBY RECOMMENDED THAT the defendant's motion to dismiss the complaint (Doc. 11.) be DENIED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or

recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 12th day of July 2013.

                                  ***/s/ Martin C. Carlson***
                                  Martin C. Carlson
                                  United States Magistrate Judge